Clerk, will the clerk please call the next case? 217-0086, Rocio Perez v. T.F. and E. Good afternoon, your honors. May it please the court, my name is Emily Vineard. I represent the petitioner Powell in this case, Rocio Perez. With the court's permission at this time, I would like to reserve five minutes for rebuttal. You always have five, yes. Thank you. Your name's not on the brief, is it? I'm sorry? Your name is on the brief. No, I didn't write that. So you did a sign-in? The brief is written by Michael Lulay. I say you did a sign-in? Yes. Is this your signature? Yes, I signed it in here. How can anybody read that? I think there's only two people today that had legible handwriting. I mean, this is all... I think we're going to require printing as well, so we know who the people are. But don't let that throw you off. Yeah, but go ahead. I just didn't know. I couldn't understand. I usually look at the briefs and figure out who you are. I couldn't find the signature. Appellant is requesting that this court reverse the commission and find that the respondent is liable for the full $37,767.32 in medical bills per the Illinois fee schedule rather than just $17,857.96 that was paid by petitioner's husband's health insurance plan. The following reasons. First, the commission's ruling grants the respondent Wendy's the benefit of someone else's contract bargain without their consent. Wendy's has no connection to Cigna. It's not a part of any contract that may have been negotiated between Cigna and Wendy's. What does the statute say? Statute 8A. Or does it specifically say that they have to pay? Employer shall provide and pay the negotiated rate, if applicable, or the lesser of the health care provider's actual charges or according to a fee schedule subject to Section 8.2. In effect, at the time the statute rendered, for all necessary, et cetera, and so on. And they contend that they paid the negotiated rate. So why is that wrong? Well, it's clear that that's the statute states that states negotiated the rate. However, the respondent had nothing to do with this negotiated rate. They did not negotiate the rate. So? The rate was negotiated between Cigna, the petitioner's husband's health care. Well, why does that make any difference? Well, it makes a difference because this was not negotiated by them. It's not clear in the statute that the negotiated rate can apply to anyone and everything. Can I stop you there? It's not clear. Is there any limiting language in the statute that we're talking about that would require the employer to pay the negotiated rate only when it's negotiated by the employer or the employer's own insurance company? Is there any language in there that tells us that? The language in the statute specifically doesn't limit that. However, the commission did issue the Illinois Workers' Compensation Commission Medical Fee Schedule instructions and guidelines, which did interpret Section 8A further. And if I could just read from that briefly, it says, The fee schedule does not preclude any privately and independently negotiated rates for agreements between a provider and carrier or provider and an employer that are negotiated for the purpose of providing services covered under the Workers' Compensation Act. It's Petitioner's position that here this is specifying that this is for the purpose of providing services under the Act, where this negotiated rate between SIGNAW and the providers that would be used here for a respondent's benefit, that was not intended for the Workers' Compensation Act services. You read to us from something the commission put out for an interpretation of the fee schedule. Is that right? Yes, that's correct. They didn't write this statute. The legislature did. And the legislature merely said pay the negotiated rate. And I think what the legislature is trying to do is to avoid what exists on the tort side, where an injured party can collect in medical expenses more money than was actually paid to the medical providers, which is in essence a windfall to the employee. And in this particular case, the legislature has written it right out by statute, it appears. Well, it's our position that actually based on the amendment to Section 8A, they could have specifically added in there language stating that this type of situation would apply, that the collateral source doctrine applies in the workers' compensation. But that is not added to the statute. Well, why would they have to add it if they were clear that the only thing they were required to do was pay the negotiated rate? Well, it's our position that that's not very clear. The negotiated rate doesn't state who negotiated it. It's not clear what negotiated rate would even apply. It would lead me to believe it doesn't make any difference who negotiated it. Well, it's possible that even if there's two group health insurances, say that the petitioner's group health had paid for some of the services and that the petitioner's husband's group health had paid for some of the services, there's different negotiated rates there. It's not very clear what would be used going forward in cases if this decision were to stand. Do you have any legislative history you can point us to that supports your interpretation? I don't have anything other than that was cited in the brief. I mean, let me ask you this rhetorical question, but I think it's legitimate. If the legislature intended to limit negotiated rates to the agreement between employers or their own carrier, why didn't they put it in the legislation? They could have, but obviously they didn't. So why does that support your side? Would it have been easy for them to do that? Well, I think it also would have been easy for them to specifically state that the client resource doctrine doesn't apply either. They left it as just stating the negotiated rate, and I believe that allows the respondent to have the possibility to negotiate their own rates. It doesn't mean that they necessarily have to pay the fee schedule, but they would be the ones to negotiate that rate. The problem that I'm having generally with the plain language that the statute reads a certain way, we are not supposed to read in the statute some exception or limitation that's not there. Isn't that a well-settled body of law we don't do that? Yes, but also here the respondent is getting a windfall, and I know in the respondent's counsel's brief he stated that the windfall was for the petitioner if this case were to have gone the other way. And I guess either way someone's getting a windfall here, but respondent had nothing to do with this insurance. I'm curious. Let's say the employer wanted to take advantage of this statute and negotiate the rate with the medical providers, but Cigna, this third-party insurer, has already come in and done that. So you've got negotiated rates already in place with Cigna, but the employer is unable to take advantage of that negotiated rate under your argument because it can't take advantage of some third-party's negotiated rate. The employer just stopped because it didn't act quickly enough to go negotiate rates. Yes, I mean, this case obviously went to hearing. If it had settled, they would have had the opportunity to negotiate their own rates. Additionally, going back to the windfall issue here, if there's going to be a windfall either way, it should go to the petitioner because the petitioner and her husband, her husband's policy, they were the ones paying for the health care premiums to keep this policy active. So basically the respondent here is benefiting from this already existing, the health care premiums that the petitioner and her husband were paying. So if anyone should be the benefit of any windfall here, it should be the petitioner. Instead, the way that this case turned out in the commission was that the respondent is getting windfall almost $20,000 by not having to pay the entire fee schedule amount of these bills. What if the employer had come in with a letter from all of these medical providers that said we had previously negotiated the rate, the SIGMA will allow the same negotiated rate for you. Would that then comply with the statute? I guess in that event, they would have negotiated it themselves in a way, so possibly. But additionally — Isn't that harsh? I'm sorry? Isn't that harsh to say that that then is what the distinction is? That would allow for compliance with the statute? It seems to me that would be a complete fiction in all of this. The negotiated rate had already occurred between the medical providers and SIGMA. It doesn't make any sense. Well, again, they would have had the opportunity to negotiate their own rate separately if this case had been handled differently, if it had settled before trial. But at that point in trial, the medical bills were awarded, and at that point the fee schedule amount was $37,000. Well, this was actually paid by the health insurance carrier from the husband, was it not? Correct. So, I mean, nothing at trial, the providers had been paid. They had been paid under health insurance. Right, but it's still the respondent that's taking the benefit of that previous agreement and capitalizing off of that and getting the insurance. Again, if the collateral source rule were applicable to workers' compensation, you'd probably be right. But unfortunately, I think the legislature wanted to put a stake in the heart of the collateral source rule, at least as it applies to workers' comp cases. It's saying that the employer is only required to provide and pay the negotiated rate. The administrative code also has a provision in it, does it not? Under the fee schedule, the employer pays the lesser of the rate set forth in the schedule or the provider's actual charge. If an employer or insurance carrier contracts with a provider for the purpose of providing services under the act, the rate negotiated in the contract shall prevail. That's correct, but it is referring to specifically an employer. So in this situation, it's basically just allowing anyone to have any kind of negotiated deal that's out of it to be the amount that gets paid, where if this were to stand going forward, it's not clear what rate would apply in every situation. It would make calculating medical bills a lot more complicated when there's different group health plans that are involved in each situation. You know, it occurs to me that workers' compensation has a different purpose than our tort law. Workers' compensation is for the purpose of benefiting injured employees so that they don't lose income by reason of an industrial accident. If their medical bills are paid for them and they're not required to pay any money for them, it occurs to me that the purpose of the act has been fulfilled. They're not required to pay anything. It's not a question of who has a windfall or who doesn't have a windfall, but certainly the Workers' Compensation Act was not intended to be a windfall for an injured employee. It was only intended to make sure that their wages were paid and that their medical expenses were paid. And in this case, clearly the expenses were paid. No, I agree with that. That's the purpose of the act, but it's also not the purpose to whatever if there's a windfall to have it be. What is a windfall? I've always been curious about that. Somebody charged X and somebody got paid X. Where's the windfall? What's a windfall? Well, the petitioner and her husband were the ones paying the health insurance premium, so they were paying out-of-pocket for their own health insurance plan that here was... So if we're a court of equity, put on evidence how much they paid for insurance premiums during the period of time that they were injured or in the period of recovery, then I'd be happy with that. I'm sorry, could you repeat that? Yeah. You're saying, well, it was the employee's husband's insurance... Correct. ...that paid for medical expenses of the injured worker. And you're saying, well, that they paid the premiums to have that insurance in effect. And so it's a windfall to the company, right? Well, I would say it's a windfall for the respondent because they owe the medical bills. That's called a company to respond to. Yeah, that's a company. Okay. So it's a windfall, right, to them because they didn't have to pay the premiums? The injured worker's spouse paid the premiums? They got the benefit of this previously existing health insurance policy. So in the court of equity, if you could tell me how much those premiums were during this period of relevancy and the check was cut to your client, you'd be happy with that? No, I mean, I think it's just something to take into consideration. Well, that took care of that quote windfall, didn't it? Well, they were the ones who had the policy. Yeah, but they have an economic cost to that policy you're telling me that they're not being compensated for. Correct. So if we could just cut a check for that premium, then you'd be happy with it? Well, I think it's not necessarily the premium for that period of time. I think it's just something that should be taken into consideration. Well, how would we effortably deal with it to make everybody whole, make everybody fair? That's a good question. It's just I don't know that either way in the situation someone's going to benefit. But the act has said you're responsible for only the amount of expenses that are actually charged, right? Correct, but the amount charged was the amount even higher than the fee schedule. It was just a negotiation. How much was actually paid? The amount actually paid was around 17. Again, this isn't tort law where we have this idea we can run these, get a sticker price, and the sticker price we pretend is actually what was paid for the car. This is actually an act that says you don't pay sticker price. You pay whatever was actually the cost of the car. I mean, that's just my metaphor. Isn't that really what this act is saying? I think in a way. I'd also like to address the Tower Automotive case that the commission relied upon for its decision. In the holding of this case, it states that the holding is of limited future significance as the legislator has been fit to amend Section 8A of the act. And going back to something we discussed earlier, Section 8A was amended, but it was not specifically addressed that the collateral source doctrine should be abolished. But the reason is the soul of the rules. Tort law allows an injured person to collect as against a wrongdoer. And if the injured person has paid for health insurance, that results in a negotiated rate below that which the provider would normally charge. The collateral source rule prevents the wrongdoer from benefiting from it. And so he has to pay the injured employee whatever the actual cost, the actual value of the service was as opposed to what was actually paid. Now let's look at workers' compensation. There aren't wrongdoers in workers' compensation. It's very rare in any one of these cases that the employer is actually responsible for the injury. Most of the time the employee is responsible for his own injury. But we allow a recovery for a reason. And that reason is not served by forcing an employer to pay money under the guise of medical bills that were never actually paid. And the legislature steps in and says no. The only thing you have to do under 8A is you have to pay what was actually the negotiated rate. And it occurs to me that the two different areas of law serve two different purposes. And one, maybe you can justify the collateral source rule, at least the Supreme Court thinks you can. But in the other, the legislature evidently, to my mind, has said no. And I understand what your argument is. You want to suggest that the statute is ambiguous because it doesn't indicate who paid for the insurance that resulted in the negotiated rate. And if it's not the employer or the employer's carrier, then they can't take advantage of it. Your opponent wants the other interpretation. The case, I mean, that's what the case is all about. Okay. You have time to reply. Thank you. Thank you. Counsel may respond. Good afternoon, Your Honors. My name is Jeff Ross, and I'm here on behalf of Wendy's Elite. First, I'd like to address essentially what we've talked about thus far. The purpose of the Employer Workers' Compensation Act is a remedial statute. The purpose is to make an injured party whole again. In this case, although initially, to go back a little ways, was deemed not compensable by the arbitrator and the commission and the circuit court. Eventually, the issue of the accident came up to the appellate court, and it was reversed. Does that make any difference? No, I'm just getting some background in terms of how it works. We know the background. The issue in the case is how do you interpret the statute. That's all it is. Okay. Nothing more, nothing less. The plain language of the statute is not ambiguous. It's clear. The language, even after the tower on the motive is decided, specifically states, employers shall provide a negotiated rate for the lesser of the health care provider's actual charges or the medical fee schedule. There's nothing in there that specifically states that the negotiated rates have to be between the employer and its insurance company, and there's nothing in the statute that specifically states respondents or the employer has to pay per the medical fee schedule. So there's no limitations or restrictions whatsoever on the plain language, correct? Correct. Based on my review of it, and as counsel argued from her behalf, the legislature could have also drafted language into the statute when they amended it in 2011 that if they wanted for the negotiated rates to be between the employer and its own carrier, they could have done it as well. But they didn't. The grand scheme of the issue here is whether or not the petitioner was made whole. And, yes, based on the disputed nature of the claim, the medical bills were replaced through the spouse's group carrier, and those payments were made. The providers were made whole. There's a zero balance. The petitioner has no responsibility or liability. Rather than belabor this, what do you make of her windfall argument? She seems to be saying that the statute is designed to preclude a windfall. I'm not sure who's getting the windfall, but what do you make of that? You know, I was hoping to stay away from the windfall language because, you know, I know it's a... Well, she's saying it in her head, and that's all. No, I understand. And, obviously, my response to that is it's the exact opposite. The windfall when we got onto the petitioner in this matter where, as of the time that this was all decided, she had zero responsibility, zero liability for medical bills. She, from the medical bill perspective, is essentially made whole. The purpose of the act. For you to require the employer, then, to pay beyond what was negotiated and accepted... She made the windfall, you're saying. Exactly. So, instead of the insurance company paying or the employer paying the $17,000, which was accepted by the providers and everyone's satisfied, the counsel is essentially asking for responding to the employer to pay $37,000, which was what the medical fee schedule was. So, where's the windfall lie? In my opinion, that would then be a $20,000 windfall. It's in the pocket of the plaintiff who, from a medical bill perspective, was already made whole. And, in my review of the amendments in the act in 2011, the point of it was to limit the ability that physicians had to charge. Employers were leaving. We were trying to encourage employers to stay. Medical bills was a significant issue. So, the act of 8A was essentially established to allow the employers to not be burdened to pay more than what was owed and accepted, because that would force employers to leave. That would make everyone unhappy. You know, in the grand scheme of it, what is the point of it here? The purpose is to make the petition whole. Respondent, employer paid the complete amount of money that was accepted by the providers. She was made whole. To force the respondent to pay anything more than that is similar to the car analogy that you brought up. You're out of work. So, the sticker price of a car is essentially what the doctors charge. The doctors know, similar to car salesmen, that they're not going to sell that car for what the sticker price is, most likely. So, then you come into these various negotiations, and whether or not it's a third-party carrier or the insurance company directly related to the employer negotiating those rates, a rate was negotiated. The charges that were made by these providers for the medical injury from that injured worker were paid and accepted. So, requiring the employer to then try to pay a sticker price for more than what the negotiated rate was, I don't see, it's against public policy. The point is to benefit the employer and the employee in this matter, and everyone's made whole. Aside from that, the plain language of the statute doesn't have those restrictions or limitations. Right. And that's all you need to argue. The plain language is the plain language, and I would ask you to interpret it as it is, and I in favor of the commission and the circuit court in this matter. Thank you very much. Thank you, counsel. Counsel, you may respond. Just briefly, Your Honors, not to rehash everything all over again, discussed in detail my arguments, basically, that the commission's ruling grants the respondent the benefit of someone else's bargain. They're the ones that are benefiting from this prior existing health insurance plan and the payments that the petitioner's husband made, but his plan made on behalf of the petitioner for her medical treatment for this injury. Additionally, the commission's ruling that respondent had to only pay the $17,800 sum that was paid by health insurance rather than the fee schedule amount results in a windfall to the respondent of almost $20,000, which they did nothing to get, to contribute to. And then finally, the commission's ruling is not supported by its own Illinois Workers' Compensation Commission medical fee schedule instructions and guidelines that it issued, which represent the commission's interpretation of how Section 8A should be interpreted. So based on all of that, for the foregoing reasons, appellant respectfully requests that this Court reverse the decision of the commission and find that the petitioner appellant should be awarded the full fee schedule amount of $37,767.32 for her bills rather than the $17,857.96 paid by her husband's group, Health Insurance Cigna. Thank you, Your Honors. Thank you, Counsel. Thank you, Counsel, for all of your arguments in this matter. We've taken our advisement written from this petition and shall issue.